U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2009 MAR -5 P 3: 53

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.                                Cr. No. 09-CR-52-01-JD

COLIN P. LINDSEY

## INFORMATION

**THE UNITED STATES ATTORNEY** charges that at all times relevant to this Information:

### Background

1. The defendant, **COLIN P. LINDSEY**, was the founder, owner, president and Chairman of the Board of Directors of Noble Trust Company ("NTC"), a non-depository financial institution that was chartered under the laws of the State of New Hampshire. NTC provided investment advice and executed investment decisions on behalf of its customers, to whom **LINDSEY** owed a fiduciary duty.

2. From approximately June 2004 to approximately September 2007, a number of NTC's customers' funds were held in a product that was created and managed by **LINDSEY**, the Noble Alternative Income Fund ("NAIF"). Each client for whom an NAIF account was established ("NAIF account holder") was told by **LINDSEY** that their money would be invested in an account that was earning annual interest payments of at least 12 percent, which, at the account holder's option, would be paid on a periodic basis or as a lump sum when the account was closed. Each NAIF account holder paid an annual management fee to NTC.

3. **LINDSEY** caused account statements to be prepared and mailed to NAIF account holders four times each year. The general purpose for each statement was to identify transactions that occurred in an account during the period covered by the statement, and to state the current market value of the account at the end of the period covered by the statement.

4. **LINDSEY** used funds held in the NAIF to make separate loans to a company in Colorado, Sierra Factoring, Inc. ("Sierra"). Reportedly, Sierra used the loans it received from NTC to purchase accounts receivable from other companies and to make loans to small businesses. In general, in exchange for each fixed term, 12 percent loan, Sierra paid a one-time up-front commission to NTC.

5. The promissory notes Sierra issued to NTC for each loan obligated Sierra to make periodic loan repayments to NTC. If Sierra had fulfilled its obligations under the notes, NTC would have used the money it received from Sierra to make interest payments to NAIF account holders.

6. During the first several months of NTC's relationship with Sierra, Sierra received loans in excess of $15 million from NTC, more than 75% of NTC's overall business. Unbeknownst to the NAIF account holders, Sierra's financial condition was unstable and deteriorating and, within a short period of time, its payments to NTC were partial and/or not made on time.

7. Sierra made its last payment to NTC in August 2006. During the next several months, NTC's ability to make payments to existing NAIF account holders was severely compromised. Thereafter, from approximately October 2006 to approximately September 2007, **LINDSEY** used approximately $781,000 that belonged to some of NTC's new customers to make payments to existing NAIF account holders, without disclosing the impaired nature of the new customers' investments, in violation of the fiduciary duty he owed to them.

## COUNT ONE
## Mail Fraud - 18 U.S.C. §1341

8. The allegations of paragraphs 1 through 7 of this Information are re-alleged and incorporated as if set forth in full herein.

9. From approximately October 2006 to approximately September 2007, in the District of New Hampshire and elsewhere, the defendant,

**COLIN P. LINDSEY,**

knowingly and willfully devised a scheme and artifice to obtain money by means of false and fraudulent pretenses, representations and promises and, for the purpose of executing the scheme, caused mail matter to be delivered according to the directions thereon by the United States Postal Service, in violation of 18 U.S.C. §1341.

10. During that time, **LINDSEY** concealed the fact that new customers' money was used to make payments to existing NAIF account holders - in violation of the fiduciary duty that he owed to the new clients - by causing misleading quarterly account statements to be mailed to each new client, which falsely reported that the current market value of each account was at least equal to the amount of money that was originally placed into the account;

All in violation of Title 18, United States Code, Section 1341.

## COUNT TWO
## Mail Fraud - 18 U.S.C. §1341

11. The allegations of paragraph 1 through 7 of this Information are re-alleged and incorporated as if set in full herein.

12. **LINDSEY** was also the owner of an insurance agency in Manchester, New Hampshire, Balcarres, LLC ("Balcarres"). Through Balcarres, **LINDSEY** sold high value life insurance policies ("high value policies") for Phoenix Life Insurance Company, AXA Insurance Company and Penn Life Insurance Company ("the insurance companies").

13. The face value of a high value policy was between $5 million and $10 million. To qualify for a high value policy a person must, among other things, be at least 70 years old and have a personal financial net worth that is at least equal to the value

of the policy he intends to purchase. To acquire a high value policy, an applicant must also agree to pay premiums to the insurance company that total several hundred thousand dollars each year.

14. When a customer of Balcarres purchased a high value policy, the insurance company paid an up-front commission to Balcarres that was equal to 80% to 112% of the premium for the first year of the policy.

15. From in and around November 2006 to in and around July 2007, in the District of New Hampshire and elsewhere, the defendant,

**COLIN P. LINDSEY**,

knowingly and willfully devised a scheme and artifice to obtain money by means of false and fraudulent pretenses, representations and promises and, for the purpose of executing the scheme, caused mail matter to be delivered according to the directions thereon by the United States Postal Service, in violation of 18 U.S.C. §1341.

16. During that time, **LINDSEY** acquired twelve high value policies for customers of Balcarres by knowingly mailing documents to the insurance companies that contained materially false and fraudulent statements regarding the personal financial net worth of each applicant. Through that conduct, **LINDSEY** caused the insurance companies to pay commissions to Balcarres that totaled more than $5.5 million. **LINDSEY** used the commissions that were paid to Balcarres to make payments that NTC owed to NAIF account holders;

All in violation of Title 18, United States Code, Section 1341.

Dated: March 5, 2009

                Thomas P. Colantuono
                United States Attorney

By:   */s/ Robert M. Kinsella*
       Robert M. Kinsella
       Assistant United States Attorney

       */s/ Elizabeth Baker*
       Elizabeth Baker
       Special Assistant United States Attorney